UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

_____

| In Re:<br><br>**Daren Robert Farnsworth<br>and Michele Farnsworth,**<br><br>Debtors. | **Bankruptcy Case<br>No. 15-40724-JDP** |
|---|---|

_____

**MEMORANDUM OF DECISION**

_____

**Appearances:**

    Ryan E. Farnsworth, Idaho Falls, Idaho, Attorney for Debtors.

    R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

*Introduction*

In this chapter 7[1] case, the Court is asked to revisit an exemption ruling it made in 2001. In doing so, the Court determines that, based upon

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

changes made to the Federal tax laws, a different result is now required.[2]

*Facts*

On July 23, 2015, Daren Robert Farnsworth and Michele Farnsworth ("Debtors") filed a chapter 7 bankruptcy petition. Dkt. No. 1. When they filed their return for tax year 2015, Debtors were entitled to receive a Federal tax refund, $2,831 of which was attributable to an Earned Income Credit, and $4,000 of which was attributable to an Additional Child Tax Credit ("ACTC"). Stipulated Facts at ¶¶ 2-3, and Ex. A ( 2015 U.S. Individual Tax Return), Dkt. No. 36. On May 24, 2016, Debtors amended their bankruptcy schedules to include the 2015 federal and state tax refunds, and to claim the Earned Income Credit and the ACTC exempt under Idaho Code § 11-603(4). Dkt. No. 27.

Chapter 7 trustee R. Sam Hopkins ("Trustee") objected to the exemption Debtors claimed relating to the $4,000 ACTC, relying upon case

---

[2] This Memorandum constitutes the Court's findings of fact and conclusions of law. Rules 7052; 9014.

MEMORANDUM OF DECISION – 2

law from this Court. Dkt. No. 29.[3] Debtors responded to the objection and the Court conducted a hearing on August 9, 2016. Dkt. Nos. 30, 38-39. At the conclusion of the hearing, the Court asked the parties to submit supplemental briefing, and they did so. Dkt. Nos. 44, 45. Trustee's objection was taken under advisement. This Memorandum resolves the issues raised by the objection.

*Analysis and Disposition*

A.   The ACTC As Originally Enacted

In 1997, Congress created the Child Tax Credit ("CTC") to "reduce the individual income tax burden of [families with dependent children, to] better recognize the financial responsibilities of raising dependent children, and [to] promote family values." H.R. Rep. 105-148, at 310 (1997), 1997 U.S.C.C.A.N. 678, 704, codified at 26 U.S.C. § 24. With its enactment, parents whose income fell below a threshold could claim on their federal tax return a nonrefundable credit against their tax liability of

---

[3] Trustee did not object to the exemption claimed in the $2,831 Earned Income Credit. *Id*.

MEMORANDUM OF DECISION – 3

$500 per qualifying child. *Id*. Originally, the CTC was only available to qualifying taxpayers with modified adjusted gross incomes of at least $10,000, and the benefit of the credit began to phase out when married taxpayers reached a modified adjusted gross income of $110,000. *Id*.

In the same legislation, a second credit was established, the ACTC. Under this law, taxpayers with three or more children could receive a partial refund of the credit once their tax liability was reduced to zero. Originally, the ACTC was limited to 10% of a taxpayer's "earned income" over $10,000. *Id*.

B.      *Steinmetz* and Exemption of ACTC Refunds

In early 2001, this Court was asked to decide the same issue that is before the Court today: whether the ACTC is a "public assistance" benefit exemptible under Idaho Code § 11-603(4), which protects "[b]enefits the individual is entitled to receive under federal, state, or local public assistance legislation[.]" *See In re Steinmetz*, 261 B.R. 32 (Bankr. D. Idaho 2001). In its ruling, to decide whether the portion of the debtors' federal tax refund attributable to the ACTC was public assistance, the Court

MEMORANDUM OF DECISION – 4

employed a three-part inquiry developed in prior case law. The Court asked:

> [f]irst, what is the purpose and policy of the tax credit, as enunciated by the courts or established by legislative history and in particular is that policy one of "public assistance" as found in [*In re Jones*, 107 B.R. 751 (Bankr. D. Idaho 1989]. Second, what is the nature of the debtor/taxpayer's access to the credit, i.e., is it a refundable credit. Third, when and at what income levels is the credit phased down and/or eliminated.

*In re Steinmetz*, 261 B.R. at 33 (quoting *In re Crampton*, 249 B.R. 215, 217-18, (Bankr. D. Idaho 2000); *see also, In re Dever*, 250 B.R. 701, 704 (Bankr. D. Idaho 2000)).

In *Steinmetz*, the Court first considered the purpose and policy underlying the ACTC. At the time of the statute's enactment, there was nothing in the available legislative history explaining the reasons why Congress established the ACTC. However, there were statements of Congressional intent provided for the CTC, created in the same legislation as ACTC. Congress's stated intent for the CTC was to reduce tax liability to reflect a family's reduced ability to pay taxes as family size increased,

MEMORANDUM OF DECISION – 5

even for those families with significant annual income. *In re Steinmetz*, 261 B.R. at 34 (citing *Dever*, 250 B.R. at 705, quoting H.R. Rep. 105-148, at 309-10 (1997)). And since the refundable ACTC was available to taxpayers with significant incomes, the Court found in *Steinmetz* that the ACTC was not specifically intended to benefit only low income households. *In re Steinmetz*, 261 B.R. at 34. Because fairly affluent taxpayers were eligible for the ACTC, this factor weighed against permitting the exemption.

The Court concluded that the second consideration, focusing on the taxpayer's access to the credit, weighed in favor of the ACTC being exempt. Unlike the CTC, which is a nonrefundable credit, under the ACTC, a taxpayer is entitled to a payment of either the amount of the CTC, or that portion of it that is equal to the amount of taxes paid which exceed the earned income credit, whichever is less. *In re Steinmetz*, 261 B.R. at 34-35 (citing 26 U.S.C. § 24(d)). Because the ACTC is refundable, and therefore available to help families meet their daily needs, this factor suggested the credit should be exemptible.

The third factor considered in *In re Steinmetz* examined the income

MEMORANDUM OF DECISION – 6

levels at which the amount of the credit was reduced or eliminated.  In the original law, for married taxpayers filing a joint return, the ACTC began to phase out when their modified adjusted gross income reached $110,000. *Id*. at 29 (citing 26 U.S.C. § 24(b)(2)(A)).  This Court observed that this "high threshold employed by Congress before the additional child tax credit begins to phase out indicates this credit was meant to apply to large families at a variety of income levels, and that the credit was not targeted to assist only lower-income families." *Id*.

Ultimately, this Court concluded that "[a]lthough the additional child tax credit may be refundable, the high income threshold adopted by Congress before the credit starts to phase out clearly indicates the credit was not intended as a form of public assistance legislation." *Id*. at 30.

C.   Amendments to the ACTC

Since its enactment, the ACTC has undergone important changes.  It is these amendments, Debtors contend, that render this Court's holding in *Steinmetz*, which denied the exemption, worthy of reconsideration.

First of all, in 2001, the ACTC was made available to all taxpayers

MEMORANDUM OF DECISION – 7

with qualifying children, rather than only to those with three or more children.  Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. No. 107-16, § 201, 115 Stat. 38, 45-47.  That legislation[4] also increased the refundable portion of the credit to 15% over the $10,000 "earned income" threshold beginning in 2005.  *Id*.  This increase was later accelerated to take effect in 2004.  *See* Working Families Tax Relief Act of 2004, Pub. L. No. 108-311, §§ 101-02, 118 Stat. 1166, 1167-68.

In 2008, Congress reduced the threshold amount required for eligibility for the ACTC from $10,000 in earned income down to $8,500.  Emergency Economic Stabilization – Energy Improvement and Extension – Tax Extenders and Alternative Minimum Tax Relief, Pub. L. No. 110-343, § 501, 122 Stat. 3765, 3876 (2008).  The following year, Congress again reduced the minimum earned income threshold to $3,000 for the 2009 and 2010 tax years.  American Recovery and Reinvestment Act of 2009, Pub. L.

---

[4] The 2001 amendments were not applicable in *Steinmetz*.  That decision, rendered on March 7, 2001, examined the debtors' 1999 federal tax refund.  The 2001 amendments were applicable to taxable years beginning after December 31, 2000.  *Id*.

MEMORANDUM OF DECISION – 8

No. 111-5, § 1003, 123 Stat. 115, 313.  The $3,000 minimum threshold was then extended for use in the 2011 and 2012 tax years, and later through 2017.[5]

The purpose behind these amendments to the ACTC was, at least in part, to benefit low-income families.  As the Eighth Circuit observed in a recent decision concerning this issue:

> Numerous senators recognized and commented on the benefits of the 2001 amendments for low-income taxpayers. One senator described the refundability change as "a key to helping children in low-income families."  147 Cong. Rec. S5770-01 (statement of Sen. Boxer).  Another defended the "new refundable per child tax credit for low-income, working families." *Id*. (statement of Sen. Snowe).  She explained the legislation's effect:
>
>> In its original form, the tax relief plan would not have reached all full-time workers—the tax reduction would have disappeared for wage-earners with net incomes of less than about $22,000.  Indeed, without refundability, there are almost 16 million children whose families would not benefit from the doubling of the Child Tax Credit.

---

[5] Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 103, 124 Stat. 3296, 3299; American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, § 103, 126 Stat. 2313, 2319 (2013).

MEMORANDUM OF DECISION – 9

>*Id*. And another echoed these sentiments: "Together we have stood fast in our insistence that the child tax credit should be refundable so hard-working, low-income families would receive a tax cut." *Id*. (statement of Sen. Lincoln). Others similarly lauded the benefits of the refundable credit to low-income families. *See id*. (statement of Sen. Grassley) ("The child credit expansion to low-income families is immediate. Over 16 million more children will be helped by the provisions of this bill."); *Id*. (statement of Sen. Wellstone) (describing the child credit expansion and explaining that "half a million children will be lifted out of poverty"); 147 Cong. Rec. S5028-01 (statement of Sen. Baucus) ("We increase the amount of the [child tax] credit that is partly refundable so lower income families can benefit from the credit as well.").

*Hardy v. Fink (In re Hardy)*, 787 F.3d 1189, 1194–95 (8th Cir. 2015).

In addition to comments from Congress about the purpose of the amendments to the ACTC, when he signed the 2004 amendment, President Bush stated that the changes would "increase the child credit refunds for almost 7 million low-income families in the 2004 tax year." Remarks on Signing the Working Families Tax Relief Act of 2004, 2004 U.S.C.C.A.N. S27. And when President Obama approved the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, he remarked that "[t]welve million families with 24 million children will

MEMORANDUM OF DECISION – 10

benefit from extensions of the . . . Child Tax Credit. And when combined with the payroll tax cut, 2 million American families who otherwise would have lived in poverty next year will instead be lifted out of it." Statement by President Obama Upon Signing H.R. 4853, 2010 U.S.C.C.A.N. S41.

In concluding that the ACTC should be exempt as "public assistance benefits" under Missouri law, the Eighth Circuit in *Hardy* relied in part on those Presidential and congressional statements indicating that the amendments to the ACTC statute would be beneficial to low-income families, noting that, "in practice, the ACTC is available almost exclusively to lower income taxpayers."[6] *Id.* at 1197 (citing *In re Hatch*, 519 B.R. 783, 790-91 (Bankr. S.D. Iowa 2014)). The court also concluded that the lower courts in that case had focused too narrowly on the ACTC as originally

---

[6] The Missouri courts employ a somewhat different inquiry when determining whether the "public assistance" exemption under that State's law applies than does this Court. In Missouri, the factors courts consider are: 1) Congress's intent in passing the law, 2) the history of the statute, including any amendments, and 3) the operation of the statute in practice. *In re Hardy*, 787 F.3d at 1193. Here, the Court need not consider only the Idaho definition of "public assistance," since the exemption applies to any "federal, state or local public assistance legislation." Idaho Code § 11-603(4). In other words, any benefit may be exempted that was intended by Congress to constitute public assistance.

MEMORANDUM OF DECISION – 11

enacted, without giving appropriate deference to the amendments. Concerning those amendments, the court concluded that they were targeted at aiding low-income families, and this "demonstrate[d] Congress intended to benefit the needy with the ACTC." *Id*. at 1197.

As the *Hardy* court acknowledged, there are decisions reaching opposite conclusions about whether the ACTC is exempt as public assistance.[7] The Eighth Circuit distinguished cases, like *Steinmetz*, which held the ACTC was not a public assistance benefit, because those courts considered only the ACTC legislation as originally enacted, without consideration of the subsequent amendments discussed above. *Id.* at 1197. The Eighth Circuit's characterization of *Steinmetz* is correct in this respect.

D.      Reconsideration of *Steinmetz* in Light of the ACTC Amendments

Considering the amendments made to the ACTC since it was

---

[7] *Compare In re Koch*, 299 B.R. 523, 527-28 (Bankr. C.D. Ill. 2003) (ACTC benefits exempt as "public assistance benefits"), *and In re Vazquez*, 516 B.R. 523, 526-28 (Bankr. N.D. Ill. 2014) (same), *and In re Hatch*, 519 B.R. 783, 789-91 (Bankr. S.D. Iowa 2014) (same), *with In re Dever*, 250 B.R. at 706 (CTC not exempt as public assistance), *and In re Jackson*, 2013 WL 3155595, at *2 (Bankr. S.D. Ind. June 20, 2013) (ACTC not exempt as public assistance benefit).

MEMORANDUM OF DECISION – 12

originally enacted, and subsequent to *Steinmetz*, Debtors are correct to suggest that this Court consider anew whether the ACTC is exemptible under Idaho Code § 11-603(4). Applying the same three-part inquiry used in *Steinmetz* to decide that question, the Court concludes that tax refunds paid to a debtor attributable to the ACTC may be exempted as benefits received under public assistance legislation under the Idaho exemption statute.

Recall, the first factor in the analysis considers the purpose and policy of the tax credit in question as enunciated by the courts, or as expressed in legislative history, with particular attention to whether that purpose and policy promote "public assistance." *In re Steinmetz*, 261 B.R. at 33-34 (citing *In re Jones*, 107 B.R. 751 (Bankr. D. Idaho 1989). In *In re Jones*, the Court explained that, in order to be welfare legislation, the tax credit must be intended to provide low income families with the means by which to live. 107 B.R. at 752. And, as *Steinmetz* pointed out, a pubic assistance benefit is designed "to afford economic relief to low income heads of household who work for a living." *In re Steinmetz*, 261 B.R. at 34

MEMORANDUM OF DECISION – 13

(quoting *In re Jones*, 107 B.R. at 751-52).

The purposes underlying the original ACTC legislation did not meet this standard. Indeed, the policy promoted by its enactment was to reduce the tax burden for all large families, not just poor ones. But the Court must now also consider the purposes and policies undergirding the amendments to the ACTC made over the years. And, based upon the operation of the amended statutes, and the expressions of intent from members of Congress and two Presidents, those amendments were clearly intended to benefit low-income families, and in particular, to "lift them out of poverty" through the refundable portion of the ACTC. As a result of those amendments, and the extension of the tax credit's reach to more and more lower income families, along with the stated purpose of lifting those families out of poverty, the Court concludes that the first "public assistance" prong is met by the amended ACTC. In other words, the changes to the ACTC were primarily intended to benefit low income families, even if the credit also benefits some taxpayers with higher incomes.

MEMORANDUM OF DECISION – 14

The Court's analysis of the second factor, examining the nature of the debtor/taxpayer's access to the credit, has not changed under the amendments to the ACTC.  The credit remains a refundable one, and thus, this factor continues to suggest that the ACTC should be exemptible.

Finally, the third factor considers when, and at what income levels, the credit phases out and eventually is eliminated.  This factor has likewise not changed with the amendments, as only the minimum income levels for eligibility have been modified and lowered, while the income ceiling at which benefits are capped remains at $110,000.  Thus, again, this factor weighs against the ACTC portion of Debtors' refund being exemptible.  Even so, the Court need not conclude the ACTC is not public assistance simply because some recipients of refunds have significant incomes.  Indeed, by lowering the eligibility requirements to receive an ACTC refund, Congress has ensured that the bulk of such refunds go to parents with very modest incomes, and likely small or no tax liabilities.  In this sense, then, the primary impact is to benefit low income families, where even a minimal refund may play an important role in addressing living

MEMORANDUM OF DECISION – 15

costs. *See* Rebekah Keller, Note, *The Eighth Circuit Allows a Child Tax Credit Exemption in Bankruptcy Proceedings: A Minty Fresh Start or Abuse of the System?*, 81 Mo. L. Rev. 561, 579-80 (2016).

On balance, the Court concludes that, unlike when the ACTC was originally adopted, the *In re Crampton* factors now tip in favor of debtors in bankruptcy being able to exempt that portion of a tax refund attributable to the ACTC as public assistance. In so holding, the Court acknowledges that the evidence that the ACTC is "public assistance" is not overwhelming. On the other hand, the Court has long held that exemption statutes are to be liberally construed in favor of the debtor. *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005); *In re Stanger*, 385 B.R. 758, 763 (Bankr. D. Idaho 2008); *In re Gutke*, 528 B.R. 798, 799 (Bankr. D. Idaho 2015). All things considered, then, allowing the exemption is the appropriate outcome.

///

///

## *Conclusion*

MEMORANDUM OF DECISION – 16

Debtors' exemption claim for the portion of their 2015 federal tax refund attributable to the ACTC under Idaho Code § 11-603(4) is proper. Trustee's objection to that claim of exemption will be overruled in a separate order.

Dated:  October 11, 2016

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge